United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL M. TURNACLIFF, in his capacity as administrator for THE ESTATE OF KATHLEEN M. DODD,<br><br>        Plaintiff,<br>  v.<br><br>STEVE WESTLY, in his official capacity as STATE CONTROLLER OF THE STATE OF CALIFORNIA, and his custodial capacity as administrator of the Unclaimed Property Fund, and DOES 1-25 inclusive,<br><br>        Defendants.<br>_____ / | No. C 05-05303 SI<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

On June 2, 2006, the Court heard oral argument on defendant's motion for judgment on the pleadings. After careful consideration of the parties' papers and the arguments of counsel, the Court hereby DENIES defendant's motion.

**BACKGROUND**

In his capacity as administrator for the Estate of Kathleen M. Dodd, plaintiff Michael Turnacliff filed this action on December 21, 2005, against Steve Westly, in his individual and official capacity as State Controller for the State of California, and in his custodial capacity as administrator of the Unclaimed Property Fund. The complaint alleges that Kathleen M. Dodd (a.k.a Kathleen Daddy) died on November 15, 1958. Complaint ¶ 6. On June 29, 1990, the California State Controller's Office

received 57,600 shares of Echlin, Inc. stock belonging to Ms. Daddy. *Id.*[1] On March 19, 1992, the Controller received reported dividends of $226,886.40. *Id.* The Controller sold the stock on June 17, 1993 for $1,513,152.00. *Id.* While the shares were held by the Controller, they earned additional dividends of $120,960.00. *Id.* The Controller held these funds in an account with property ID# 13232939. *Id.*, Ex. A.

On or around May 28, 2003, the Estate of Kathleen M. Dodd filed a claim with the Controller for unclaimed property held by the State. Pl's Opposition at 2:9. On June 24, 2003, the Controller issued a check to the Estate of Kathleen M. Dodd for $1,983,175.21, which purportedly represented the amounts listed above plus simple interest at a rate of 1.69%. *Id.* ¶ 7. From August 2003 through January 2004, the Estate repeatedly attempted to contact the Controller by letter, e-mail and telephone to request an explanation as to how the figure was calculated. *Id.* ¶ 22. The interest was incorrectly calculated, and on January 21, 2005, the Controller issued an additional check for $201,196.48, representing an accurate calculation of the 1.69% simple interest plus a payment of $1,194.42 on a separate account. *Id.* The separate account is not at issue in this case. In March and May of 2005, the Estate requested further explanation of the interest calculation. *Id.* ¶ 24. The Controller never responded to the Estate's inquiries, and plaintiff filed this suit on December 21, 2005. *Id.*

Plaintiff alleges that the Controller underpaid the interest owed because the Estate is entitled under California law to all interest actually earned by the stock, and that the Controller should have compounded interest annually and/or applied the average interest rate of approximately 4.5% for the period during which the State held Dodd's stock *Id.* ¶¶ 19-21. The specific statute requiring payment of interest on unclaimed property is California Code of Civil Procedure Section 1540(c). From 1978 to 2002, Section 1540(c) read:

> The Controller shall add interest at the rate of 5 percent compounded annually or the current investment rate received upon deposits held in the Pooled Money Investment Account, whichever is lower, to the amount of any claim paid the owner under this section for the period the property was on deposit in the Unclaimed Property Fund.[2]

---

[1] The complaint is silent as to what happened between Ms. Dodd's death in 1958 and 1990 when the State received Ms. Dodd's stock.

[2] Plaintiff refers to this version as the "1978 version."

2

In 2002, Section 1540(c) was changed to read:

> The Controller shall add interest at the rate of 5 percent or the bond equivalent rate of 13-week United States Treasury bills, whichever is lower, to the amount of any claim paid the owner under this section for the period the property was on deposit in the Unclaimed Property Fund.[3]

On August 11, 2003, after the Controller paid the Estate's claim, Section 1540(c) was changed again to read: "No interest shall be payable on any claim under this chapter."[4]

Plaintiff alleges that the Controller improperly and unconstitutionally paid the Estate's claim under the 2002 statute, and that the Controller should have applied the 1978 statute for the time period 1992 to 2002. Complaint ¶¶ 19-21. Plaintiff alleges that the Plaintiff estimates the unpaid interest is approximately $859,577.60. *Id.* ¶ 18.

Plaintiff alleges six causes of action: three claims under 42 U.S.C. § 1983 alleging violations of the Takings Clause and Procedural Due Process; breach of fiduciary duty; declaratory relief; and accounting. Plaintiff seeks, *inter alia*, additional interest, a declaration that the 2002 version of a California law applied by the Controller to calculate interest is unconstitutional, and an accounting. *Id.* at Prayer for Relief ¶¶ 1-9.

Now before the Court is defendant's motion for judgment on the pleadings.[5]

**LEGAL STANDARD**

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Proc/ 12(c). Rules 12(b)(6) and 12(c) are substantially identical. *See* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 9:319 (2006). Under either provision, a court must determine whether the facts alleged in the complaint, to be taken for these purposes as true, entitle the plaintiff to a legal remedy. *Id*. If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed or

---

[3] Plaintiff refers to this version as the "2002 version."

[4] The parties agree that this version of Section 1540(c) is not applicable to plaintiff's claims.

[5] At the hearing, plaintiff's counsel requested leave to amend. The Court DENIES plaintiff's oral request; if plaintiff wishes to amend the complaint, plaintiff may file a noticed motion.

3

judgment granted on the pleadings.

While Rule 12(c) of the Federal Rules of Civil Procedure does not expressly provide for partial judgment on the pleadings, neither does it bar them; it is common to apply Rule 12(c) to individual causes of action. *See Moran v. Peralta Community College Dist.*, 825 F. Supp. 891, 893 (N.D. Cal. 1993); Schwarzer *et al.*, *supra*, § 9:340 (common practice to permit "partial judgment on the pleadings").

## DISCUSSION

Defendant contends that this action is untimely under California's Unclaimed Property Law; is barred by the Eleventh Amendment because it is an action for money damages; and that plaintiff failed to allege compliance with California's Government Claims Act.

### 1.    Statute of Limitations

Defendant contends that this action is untimely based on the applicable law at the time when the Estate filed a claim for the unclaimed property at issue. On or about May 28, 2003, when the Controller received plaintiff's claim for the unclaimed property, Section 1540 provided that where a person claims an interest in unclaimed property delivered to the Controller, the claimant is required to file a verified claim for the proceeds on a form prescribed by the Controller. *See* Stats. 2002, Ch. 1124 (A.B. 3000), § 3, effective Sept. 30, 2002. The Controller had 90 days to consider the claim. If aggrieved by the decision of the Controller, the claimant was required to file a judicial action within 90 days of the Controller's decision:

> Any person aggrieved by a decision of the State Controller or as to whose claim the State Controller has failed to make a decision within 90 days after the filing of the claim, may commence an action, naming the State Controller as a defendant, to establish his or her claim in the superior court in any county or city and county in which the Attorney General has an office. The action shall be brought within 90 days after the decision of the State Controller or within 180 days from the filing of the claim if the State Controller fails to make a decision.

*See* Cal. Code Civ. Proc. § 1541; Stats. 2003, Ch. 228 (A.B. 1756), § 9, effective Aug. 11, 2003 (describing version of § 1541 prior to August 11, 2003). Section 1566(b) provided, "Except as provided in Section 1541, no suit shall be maintained by any person against the state or any officer or employee

4

1  thereof for or on account of any transaction entered into by the State Controller pursuant to this
2  chapter." Cal. Code Civ. Proc. § 1566(b). Defendant argues that the pre-August 2003 version of
3  Section 1541, with the 90-day statute of limitations, applies to plaintiff's claims because federal courts
4  apply the forum state's statute of limitations on actions brought under 42 U.S.C. § 1983. *See Lucchesi*
5  *v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003) ("State law governs the statutes of limitations
6  for section 1983 actions as well as questions regarding the tolling of such limitations periods.").

7  Here, the Controller received plaintiff's claim for unclaimed property on or about May 28, 2003.
8  Def's RJN, Ex 1. The Controller allowed the claim and paid the principal plus interest by check dated
9  June 24, 2003, and then issued a supplemental payment of interest on January 1, 2005. Complaint ¶ 7,
10 Ex. A. The instant action was filed on December 21, 2005, more than 90 days after both the initial and
11 supplemental payments. Accordingly, defendant contends plaintiff's suit is time-barred.

12 Plaintiff contends that Sections 1541 and 1566(b) do not apply to plaintiff's claims because these
13 statutes "provide only one potential remedy" to plaintiff, namely recourse through the state courts.
14 Plaintiff emphasizes that Section 1541 states that an aggrieved person "*may* commence an action . . .
15 in the superior court," and thus it only creates a "permissive, non-exclusive remedy." Plaintiff contends
16 that because this section makes no mention of a claimant's remedies in federal court, the time frames
17 set forth in Section 1541 do not apply to any federal court action. Instead, plaintiff asserts that the
18 appropriate statute of limitations is three years under Cal. Code of Civ. Proc. § 338(a), which provides
19 a three year time limit for bringing "an action upon a liability created by statute, other than a penalty
20 or forfeiture."

21 The Court concludes that the time frames set forth in Section 1541 apply to plaintiff's claims,
22 but that this statute should be equitably tolled based upon the factors set forth in *Daviton v.*
23 *Columbia/HCA Healthcare Corporation*, 241 F.3d 1131 (9th Cir. 2001) (en banc).[6] In *Daviton*, the
24 Ninth Circuit clarified that under California's equitable tolling doctrine, tolling should be permitted if

---

[6] The Court is not persuaded by plaintiff's Supremacy Clause argument. The Court concludes that Section 1541's reference to actions brought in state courts is simply a recognition of the State's sovereign immunity from actions for money damages in federal courts. Nothing in the plain language of Section 1541 expresses any indication that it was intended to bar federal court actions concerning the administration of the Unclaimed Property Law.

5

1 the defendant received timely notice of the initial claim and suffered no prejudice, and where the
2 plaintiff's conduct was reasonable and in good faith. *Id.* at 1138-40. The court noted that evaluation
3 of these factors involved a "practical inquiry" of the specifics of the previous claim. *Id.* at 1140. The
4 court further noted the "California courts' liberal application of the equitable tolling rules: the doctrine
5 of equitable tolling rests upon the reasoning that a claim should not be barred unless the defendant
6 would be unfairly prejudiced if the plaintiff were allowed to proceed." *Id.* at 1140 (internal citations and
7 quotations omitted).

8 Here, the complaint alleges that after the Controller issued the first check to plaintiff on June 24,
9 2003, plaintiff repeatedly attempted to contact the Controller by letter, email and telephone from August
10 2003 through January 2005. Complaint at ¶ 22.[7] By letter dated January 21, 2005, the Controller
11 informed plaintiff that "in response to your email inquiry, we have reviewed the payment calculations
12 for this claim. During this review, it was determined that the interest was understated by $200,000.00."
13 *Id.* at Ex. A. After receiving this letter, plaintiff sent a letter dated March 29, 2005 to the Controller,
14 inquiring further about the calculation of interest. *Id.* at Ex. C. The complaint alleges that defendant
15 never responded, and that on May 4, 2005, plaintiff again requested a response by both letter and email.
16 *Id.* at ¶ 24. After again receiving no response, plaintiff filed the instant lawsuit in December 2005. *Id.*

17 The Court finds that, based upon the allegations of the complaint, defendant was provided ample
18 notice of plaintiff's claim. Defendant does not contend that the Controller has been prejudiced, nor does
19 defendant assert that plaintiff has acted in bad faith. To the contrary, it appears that plaintiff repeatedly
20 sought to resolve issues related to the payment of interest through the administrative process. Indeed,
21 it was not unreasonable for plaintiff to pursue that course in light of the fact that the Controller issued
22 an additional check in January 2005. For all of these reasons, the Court concludes that the doctrine of
23 equitable tolling applies, and thus that plaintiff's claim is not time-barred.

---

[7] The complaint alternately alleges that the Controller issued an additional check in January 2004 and January 2005; however, it appears from Exhibit A that the additional check was issued in January 2005.

**2.     Eleventh Amendment**

Defendant also contends that this action is barred by the Eleventh Amendment. Whether the Eleventh Amendment bars this action turns on whether the additional interest sought by plaintiff is viewed as money damages, as defendant contends, or part of the Estate's property held in trust by the State, as plaintiff contends.

The Court concludes that this action is not barred by the Eleventh Amendment, and finds the Ninth Circuit's recent decision in *Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005), instructive. In *Taylor*, the California State Controller seized stock owned by two individuals as "unclaimed property," sold the stock and deposited the money into the State's general fund. *Id.* at 926. The stockholders filed suit in federal court and sought a declaratory judgment, disgorgement and return of either their stock investment or the return of the reasonable value thereof, money damages, and injunctive relief. *Id.* at 929. The district court dismissed all the plaintiffs' claims as barred by the Eleventh Amendment. *Id.*

The Ninth Circuit reversed. The court first noted the principle that, "[g]enerally, the Eleventh Amendment shields state governments from money judgments in federal courts, and from declaratory judgments against the state governments that would have the practical effect of requiring the state treasury to pay money to claimants." *Id.* at 929-30. The court then analyzed California's Unclaimed Property Law, which sets up a custodial escheat system for property that has not "permanently" escheated to the State.[8] The court noted that the statute, California Code of Civil Procedure §§ 1300 *et seq.*, states that "property received by the state under this chapter shall not permanently escheat to the state," and that the Controller must "safeguard and conserve" unclaimed property in a trust fund for the interests of all parties having an interest in the property. *Id.* at 930 & n. 22 (*citing* Cal. Civ. Proc. Code § 1501.5, and *Harris v. Westly*, 116 Cal. App. 4th 841, 844 (2004) (explaining that the Unclaimed Property Law does not operate a true escheat because the state holds the property as a custodian until the property's rightful owner can claim the property)).

The Ninth Circuit concluded that because the California law established a custodial trust, to the extent that the plaintiffs' funds remained in the State's special account, they were being held in trust

---

[8] Here, as in *Taylor*, it does not appear that the property permanently escheated to the State.

7

1  rather than being in the State treasury. *Id.* at 931. The court further noted that even if the Controller

2  has paid money over to the general fund of the State, the Controller is required by the California statutes

3  to order it "retransferred" from the general fund back to the "Unclaimed Property Fund" "if it is

4  subsequently determined that such money or . . . property is not, in fact, permanently escheated." *Id.*

5  (*quoting* Cal. Civ. Proc. § 1347). Thus, the court held, "the trust continues, even after the Controller

6  has transferred the money to the general fund." *Id.*

7  Based upon these principles, the *Taylor* court held that the Eleventh Amendment did not bar the

8  plaintiffs' suit because the plaintiffs simply sought the return of their property:

> The State of California's sovereign immunity applies to the state's money. Money that the state holds in custody for the benefit of private individuals is not the state's money, any more than towed cars are the state's cars. Thus, where a permanent escheat determination has not yet been made, the state's Eleventh Amendment immunity from suit against it for damages payable from its treasury has no application to escheated property and sales proceeds from escheated property, whether held by the Controller or the Treasurer.

13  *Id.* at 932; *see also Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006) (following *Taylor*, and holding that

14  Eleventh Amendment did not bar class action seeking return of seized financial assets that had not

15  permanently escheated to State).

16  Defendant contends that unlike the situation in *Taylor*, here plaintiff is not seeking the return of

17  his own property, but rather is seeking money damages resulting from the Controller's administration

18  of plaintiff's claims – interest to which he claims an entitlement but never possessed. The Court

19  disagrees. There is no dispute that during the time period that plaintiff's property was held by the State,

20  Section 1540(c) provided that plaintiff was entitled to be paid interest; the dispute raised by plaintiff's

21  complaint concerns the amount of interest to be paid. Because the applicable state law required the

22  payment of interest on monies held in the Unclaimed Property Fund, and because of the general legal

23  principle that interest owned on an account is the "private property" of the owner of the principal, the

24  Court concludes that the money sought here is "property" and not "damages." *Cf. Brown v. Legal*

25  *Foundation of Washington*, 538 U.S. 216, 235 (2003) (reiterating holding of *Phillips v. Washington*

26  *Legal Foundation*, 524 U.S. 526 (2001), that interest earned in IOLTA accounts is "private property"

27  of owner of the principal).

28  Defendant also argues that the interest sought is "money damages" because if plaintiff prevails

1 the State will be required to pay money out of the State's general fund.  However, the *Taylor* court
2 rejected a similar argument, holding that "the trust continues, even after the Controller has transferred
3 the money to the general fund [and] [t]hus the money, even if in the general fund, is not held free and
4 clear by the State of California, but subject to retransfer if the property is later found not to be
5 permanently escheated."  *Taylor*, 402 F.3d at 931.

6 The Court further concludes that this case falls under the *Lee-Malone* exception to sovereign
7 immunity established by the Supreme Court.  The *Lee-Malone* exception allows a plaintiff to assert a
8 claim for return of his property if the claim falls into one of two categories: "(1) it must be based on the
9 public official having acted beyond his statutory authority (the 'ultra vires' exception) or (2) the
10 plaintiff's theory must be that the action leading to the government's possession of the property was
11 constitutionally infirm."  *Id.* at 932-33 (*citing United States v. Lee*, 106 U.S. 196 (1882), and *Malone
12 v. Bowdoin*, 369 U.S. 643 (1962)).  Here, plaintiff alleges that the Controller acted outside his authority
13 by acting contrary to State law with regard to the computation of interest.  Accordingly plaintiff has
14 established that this case falls under the first *Lee-Malone* exception.

### 3. Government Claims Act Compliance

17 Defendant contends that plaintiff's claims are barred for failure to comply with the California
18 Government Claims Act, Cal. Gov't Code § 810, *et seq*.  The Claims Act requires prospective litigants
19 against the State seeking money or damages to first present their claims to the State Board of Control.
20 However, the Supreme Court has held that such "notice-of-claim statutes are inapplicable to federal
21 court § 1983 litigation" because "[t]his burden . . . is inconsistent in both design and effect with the
22 compensatory aims of the federal civil rights laws."  *Felder v. Casey*, 487 U.S. 131, 141 (1988).

23 Defendant contends that 42 U.S.C. § 1983 does not provide a valid basis for plaintiff's claims
24 because plaintiff is seeking money damages that will be paid out of the State Treasury.  For all the
25 reasons stated *supra*, the Court rejects this argument and holds that plaintiff was not required to comply
26 with the Government Claims Act.

9

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion for judgment on the pleadings. (Docket No. 9), and GRANTS the parties' requests for judicial notice (Docket Nos. 11, 22, 23).

**IT IS SO ORDERED.**

Dated: July 6, 2006

SUSAN ILLSTON
United States District Judge