**United States District Court**

For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   MICHAEL M. TURNACLIFF, in his capacity as          No. C 05-5303 SI
    administrator for THE ESTATE OF
9   KATHLEEN M. DODD, with will annexed,              **ORDER GRANTING DEFENDANT'S**
                                                      **MOTION FOR SUMMARY JUDGMENT**
10                  Plaintiff,                        **AND DENYING PLAINTIFF'S MOTION**
                                                      **FOR SUMMARY JUDGMENT**
11        v.

12  STEVE WESTLY, in his individual and official
    capacity as STATE CONTROLLER OF THE
13  STATE OF CALIFORNIA, and his custodial
    capacity as administrator of the Unclaimed
14  Property Fund, and DOES 1-25, inclusive,

15                  Defendant.
                                                /
16

17

18        On January 22, 2007, the Court heard argument on the parties' cross-motions for summary

19  judgment.  For the reasons set forth below, the Court hereby GRANTS defendant's motion for

20  summary judgment and DENIES plaintiff's motion.

21

22                              **BACKGROUND**

23        In his capacity as administrator for the Estate of Kathleen M. Dodd ("the Estate"), plaintiff

24  Michael Turnacliff filed this action on December 21, 2005, against Steve Westly, in his individual

25  and official capacity as State Controller for the State of California, and in his custodial capacity as

26  administrator of the Unclaimed Property Fund.  Kathleen M. Dodd (a.k.a. Kathleen Doddy) died on

27  November 15, 1958.  Complaint ¶ 6.  On June 29, 1990, the California State Controller's Office

28  received 57,600 shares of Echlin, Inc. stock belonging to Ms. Dodd.  Huarte Decl. ¶ 3, Ex. A.  On

**United States District Court**

For the Northern District of California

March 19, 1992, the Controller received reported dividends of $226,886.40. *Id.* The Controller sold the stock on June 9, 1993, for $1,513,152.00. *Id.* ¶¶ 4, 6. While the shares were held by the Controller, they earned additional dividends of $120,960.00. *Id.* ¶ 4.

On or around May 28, 2003, the Estate filed a claim with the Controller for unclaimed property held by the State. Lofton Decl. ¶ 2. On June 24, 2003, the Controller issued a check to the Estate for $1,983,175.21, which purportedly represented the amounts listed above plus simple interest at a rate of 1.69%. *Id.* ¶ 3. From August 2003 through January 2005, the Estate repeatedly attempted to contact the Controller by letter, e-mail and telephone to request an explanation as to how the figure was calculated. *Id.* ¶ 5. The interest was incorrectly calculated, and on January 21, 2005, the Controller issued an additional check for $201,196.48, representing an accurate calculation of the 1.69% simple interest plus a payment of $1,194.42 on a separate account. *Id.* The separate account is not at issue in this case. In March and May of 2005, the Estate requested further explanation of the interest calculation. *Id.* ¶ 6. The Controller never responded to the Estate's inquiries, and plaintiff filed this suit on December 21, 2005. *Id.*

Plaintiff alleges six causes of action: three claims under 42 U.S.C. § 1983 alleging violations of the Takings Clause and Procedural Due Process; one for breach of fiduciary duty; one for declaratory relief; and one for accounting. Plaintiff seeks, *inter alia*, damages in the amount of unpaid interest; a declaration that the law applied by the Controller to calculate interest is unconstitutional, or unconstitutional as applied in this case; an accounting; and punitive damages. Complaint at Prayer for Relief ¶¶ 1-9. Depending on the interest rate applied, plaintiff estimates the amount of unpaid interest to be between $498,997.03 and $859,577.60. Pl's Motion at 11-12.

Now before the Court are cross-motions for summary judgment.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

2

United States District Court

For the Northern District of California

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 317 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.    California Code of Civil Procedure Section 1540(c)**

Plaintiff first contends that the Controller improperly computed interest under Section 1540(c) of California's Unclaimed Property Law ("UPL"), California Code of Civil Procedure §§ 1300 *et seq.* At the time the Controller paid the Estate's claim, Section 1540(c) read:

The Controller shall add interest at the rate of 5 percent or the bond equivalent rate of 13-week United States Treasury bills, whichever is lower, to the amount of any claim paid the owner under this section for the period the property was on deposit in the Unclaimed Property Fund. No interest shall be payable for any period prior to January 1, 1977. Any interest required to be paid by the state pursuant to this section shall be computed as simple interest, not compound interest. For purposes of this section, the bond equivalent rate of 13-week United States Treasury bills shall be defined in accordance with the following criteria:

(1) The bond equivalent rate of 13-week United States Treasury bills established at the first auction held during the month of January shall apply for the following July 1 to December 31, inclusive.

(2) The bond equivalent rate of 13-week United States Treasury bills established at the first auction held during the month of July shall apply for the following January 1

**United States District Court**

For the Northern District of California

1   to June 30, inclusive.

2   Cal. Code Civ. Proc. § 1540(c), at Stats. 2002, Ch. 1124 (A.B. 3000), § 3, effective Sept. 30, 2002.

3       The Estate filed a claim with the Controller for unclaimed property on May 28, 2003, and the

4   Controller initially paid the claim on June 24, 2003.  Lofton Decl. ¶¶ 2-3.  The Controller determined

5   the "bond equivalent rate" to be 1.69% based upon the auction rate established at the first auction

6   held in July 2002, and applied this rate of interest to the total amount of the unclaimed estate.  Huarte

7   Decl. ¶¶ 5-6.  Plaintiff admits that the "bond equivalent rate of 13-week United States Treasury bills

8   was 1.69% on July 2, 2002."  Complaint ¶ 17.  However, plaintiff contends that the Controller erred

9   by only applying a single interest rate determined at a single auction to the entire period the property

10  was held.  Instead, plaintiff asserts that the Controller should have calculated the bond equivalent

11  rate in six month increments, and applied those rates to the respective periods for "the period the

12  property was on deposit in the Unclaimed Property Fund."  Under plaintiff's interpretation, the

13  Controller should have calculated and applied approximately 30 different interest rates for the

14  approximately 15 year period that the Estate's property was held in the Unclaimed Property Fund.

15      Neither party cites any case law interpreting Section 1540(c), and thus this appears to be an

16  issue of first impression.  The Court is required to apply California's rules of statutory construction

17  because the UPL is a California statute.  *See In re First T & D Inv., Inc.*, 253 F.3d 520, 527 (9th Cir.

18  2001).  As the California Supreme Court has stated, "[i]n the construction of a statute the intention

19  of the Legislature . . .  is to be pursued, if possible.  Ordinarily, the words of the statute provide the

20  most reliable indication of legislative intent." *Pacific Gas & Elec. Co. v. County of Stanislaus*, 16

21  Cal.4th 1143, 1152 (1997). Courts should give the language of the statute "its usual, ordinary import

22  and accord[] significance, if possible, to every word, phrase and sentence in pursuance of the

23  legislative purpose." *Dyna-Med, Inc. v. Fair Employment & Hous. Comm'n*, 43 Cal.3d 1379,

24  1386-87 (1987).

25      The Court concludes that defendant's interpretation of Section 1540(c) is the correct one.

26  The statute requires the Controller to "add interest at the rate of 5 percent or the bond equivalent *rate*

27  *of* 13-week United States Treasury bills, whichever is lower, to the amount of any claim paid the

28  owner under this section for the period the property was on deposit in the Unclaimed Property

4

United States District Court

For the Northern District of California

1    Fund." (emphasis added).  Notably, the statute states "rate," in the singular, not plural, which

2    supports defendant's interpretation of this section as requiring the application of a single rate to the

3    amount of any claim.  In addition, the statute provides that the "rate" is applied "for the period the

4    property was on deposit," again supporting the interpretation that a single rate is applied for the

5    whole time period.  If Section 1540(c) required the Controller to calculate separate rates for every six

6    month period, as plaintiff contends, the statute could have been written to say so.  Indeed, plaintiff's

7    argument that Section 1540(c) requires the Controller to add interest at "the average bond equivalent

8    rate," Pl's Motion at 4, is an implicit acknowledgment that the plain language of 1540(c), which does

9    not contain the word "average," does not mandate the calculation and application of multiple interest

10    rates.

11

12    **II.**    **"Retroactive" application of 2002 version of Section 1540(c)**

13          Plaintiff also contends that the Controller "retroactively" applied the 2002 version of Section

14    1540(c) when calculating the interest for the pre-2002 time period that the Estate's property was held

15    in the Unclaimed Property Fund.  For that time period, plaintiff contends that the Controller should

16    have applied the version of Section 1540(c) that was effective from 1978 to 2002.  The 1978 version

17    read:

18            The Controller shall add interest at the rate of 5 percent compounded annually or the
current investment rate received upon deposits held in the Pooled Money Investment

19            Account, whichever is lower, to the amount of any claim paid the owner under this
section for the period the property was on deposit in the Unclaimed Property Fund.

20

21    Cal. Code Civ. Proc. § 1540(c), at Stats. 1878, Ch. 815, § 1, effective Sept. 18, 1978.

22          "A statute does not operate 'retrospectively' merely because it is applied in a case arising

23    from conduct antedating the statute's enactment . . . or upsets expectations based in prior law.

24    Rather, the court must ask whether the new provision attaches new legal consequences to events

25    completed before its enactment."  *Landgraf v. USI Film Products*, 511 U.S. 244, 269-70 (1994).

26    The Court concludes that defendant did not retroactively apply the 2002 version of Section 1540(c)

27    because that version was in effect at all relevant times:  when plaintiff submitted his claim in May of

28    2003 and when the Controller paid the claim in June 2003.  Plaintiff does not cite any authority for

the contention that because the Estate's property was held in trust, the Estate's entitlement to the interest vested at the time the interest was earned. Further, plaintiff's reliance on *Trust Realty Partners v. Westly*, is both improper and unavailing. Not only is *Trust Realty* an unpublished state court decision currently on appeal, but it is factually distinguishable because there the issue was whether the Controller could apply the 2004 version of Section 1540(c) to a claim filed in 2000.

**III.    Actual interest**.

In addition, plaintiff argues that the Estate is entitled to all interest actually earned by the property during the time it was held by the Controller because the State held the unclaimed property in a trust. Plaintiff quotes portions of the Unclaimed Property Law which state that "[t]he care and custody of all property delivered to the Treasurer or Controller pursuant to this title is assumed by the State for the benefit of those entitled thereto . . . ." Cal. Code Civ. Proc. § 1361, and that "[a]ll monies deposited in the Unclaimed Property Fund under the provisions of this section shall be held for the benefit of those entitled to claim the property sold or leased . . . ." *Id.* § 1390. Plaintiff also cites the Ninth Circuit's decision in *Taylor v. Westly*, 402 F.3d 924, 931 (9th Cir. 2005), which held that the Unclaimed Property Law established a custodial trust.

Defendant argues that even if the UPL created a custodial trust relationship between the State and property owners, the Legislature expressly limited the interest payable on unclaimed property in California in California Code of Civil Procedure Section 1540(c), as discussed *supra*. The Court agrees. The Court must "interpret the statute to give effect to all of its parts." *Estate of Magnin v. C.I.R.*, 184 F.3d 1074, 1078 (9th Cir.1999). In order to accept plaintiff's argument, the Court would be required to completely disregard the plain language of Section 1540(c). It is not inconsistent for the State to hold unclaimed property in trust for property owners, and to also pay those property owners, pursuant to Section 1540(c), less than actual interest when those owners claim their property.[1] *Cf. Douglas Aircraft Co. v. Cranston*, 58 Cal.2d 462, 463 (1962) (noting that "[t]he

_____

[1] The Court refers here to the 2002 version of Section 1540(c) applied by the Controller in this case.

United States District Court

For the Northern District of California

1    objectives of the act are to protect unknown owners by locating them and restoring their property to

2    them and to give the state rather than the holders of unclaimed property the benefit of the use of it");

3    *Fong v. Westly*, 117 Cal. App. 4th 841, 844 (2004).[2]

4

5                                          **CONCLUSION**

6           For the foregoing reasons, the Court concludes that the Controller did not violate the

7    Unclaimed Property Law when he paid the Estate's claim, and thus defendant is entitled to summary

8    judgment on all of plaintiff's claims.[3]   The Court hereby GRANTS defendant's motion for summary

9    judgment and DENIES plaintiff's motion for summary judgment.  (Docket Nos. 30, 35).

10

11           **IT IS SO ORDERED.**

12

13   Dated: January 23, 2007                                    _____

14                                                              SUSAN ILLSTON
                                                                United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26           [2]  In light of the Court's disposition of this claim, the Court does not address the parties'
     arguments about whether the Estate's property actually earned interest.
27
             [3]  In light of the resolution of plaintiff's claims, the Court need not address the parties' arguments
28   regarding whether the Controller is entitled to qualified immunity in his individual capacity.

**United States District Court**

For the Northern District of California